UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWIN WILLIAMS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

AUTONATION, INC.,

Defendant.

---

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, EDWIN WILLIAMS**,** ("Plaintiff" or "Mr. Williams"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, AUTONATION, INC., ("AUTONATION" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using a computer or mobile device. (Ex. A – Edwin Williams, Medical Documentation of Legal Blindness, dated March 4, 2025). Plaintiff uses the terms "blind" or "visually-impaired," as his central visual acuity with correction is less than or equal to 20/200 and his functional visual field radius is less than 20 degrees in both eyes. Mr. Williams has been clinically diagnosed with **Best Disease (Vitelliform Macular Dystrophy)**, a progressive retinal condition that permanently impairs central vision. He relies on screen-reading software, magnification tools, and keyboard-based navigation to access digital content and perform daily tasks.

2. Defendant AutoNation, Inc., a Delaware corporation headquartered in Fort Lauderdale,

Florida, owns and operates the website www.autonation.com. AutoNation is the largest automotive retailer in the United States, with approximately 300 dealerships across 18 states, including New York. The Website serves as a digital gateway to AutoNation's nationwide inventory, financing services, and dealership network. It allows consumers to browse vehicles, schedule test drives, arrange financing, and purchase protection plans. these

3. Critically, the Website functions as a primary sales and service portal, offering consumers the ability to transact business online. Although Mr. Williams is sight-impaired, his aide possesses a valid driver's license and frequently ferries him to appointments in New York, including The Lighthouse, Visions, medical visits, shopping trips, and non-essential outings simply to get out of the home. Mr. Williams intended to use Defendant's Website to research and purchase a newer Audi model, but the accessibility barriers—including missing alternative text, broken ARIA references, and unlabeled form controls—prevented him from discovering the availability, pricing, and financing options for his desired vehicle. These barriers denied him equal access to the goods and services offered by Defendant. Mr. Williams remains highly interested in purchasing an Audi through AutoNation's platform and intends to revisit the Website upon its remediation so that he may independently access the information and complete a transaction on equal terms with sighted consumers.

4. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Defendant's Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired individuals. Accessibility testing of AutoNation.com revealed systemic barriers, including 81 errors flagged by WAVE, dozens of missing alternative text attributes, empty buttons and links, broken ARIA references, invalid language attributes, and contrast failures. A separate SortSite validation scan identified over 2,700 pages with missing accessible names for links, improper use of ARIA labels, unlabeled form controls, broken anchors, and hundreds of instances of

insufficient color contrast**.** These pervasive defects prevent screen-reading software from accurately conveying critical information such as vehicle availability, pricing, financing options, and protection plans. In addition, Accessibility Expert C. Vaughan independently conducted an audit of AutoNation.com and issued a formal Audit Report corroborating Plaintiff's allegations and confirming the barriers identified by both the WAVE and SortSite testing tools**.** Collectively, these findings demonstrate that Defendant has failed to take reasonable steps to ensure its Website complies with WCAG 2.1 standards and remains accessible to blind and visually-impaired consumers. As a result, Plaintiff was denied equal access to the goods and services offered by Defendant, including the ability to independently research and purchase his desired Audi vehicle. Defendant's denial of full and equal access to the Website—and therefore its denial of the goods, services, and opportunities offered thereby—constitutes ongoing violations of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5. According to the U.S. Census Bureau (2010), approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind. The American Foundation for the Blind's 2015 report estimates that approximately 400,000 visually impaired persons reside in New York State.

6. Congress has issued a clear national mandate to eliminate discrimination against individuals with disabilities. This includes barriers to full integration, independent living, and equal opportunity—barriers perpetuated by websites and other public accommodations that remain inaccessible to blind and visually impaired persons. New York State and New York City law similarly require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7. Defendant has operated its public-facing digital platform since launch, offering apparel products to a nationwide consumer base. Despite its commercial success and brand

visibility, Defendant has failed to implement WCAG-compliant features across its Website. Multiple accessibility audits conducted by Plaintiff's counsel confirm persistent violations, including missing alternative text, unlabeled form fields, keyboard navigation traps, lack of ARIA roles, and absence of skip links or semantic landmarks. Defendant's failure to remediate—despite clear federal guidance and ample opportunity—reflects a sustained and knowing disregard for the rights of individuals with disabilities.

8. Plaintiff is deeply invested in maintaining independence in online shopping and relies on product transparency to make informed purchasing decisions. He specifically sought out Defendant's Website because of its reputation for nationwide automobile sales, financing options, and bundled protection plans. Plaintiff attempted to browse the Website to learn about vehicle availability, review pricing and financing terms, and initiate the purchase of a newer Audi. However, unless Defendant remedies the numerous access barriers—including missing alt text, unlabeled buttons, broken ARIA references, and inaccessible form fields—Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction. Defendant's denial of equal access to its Website constitutes unlawful discrimination under the ADA.

9. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its Website and dealership operations become and remain accessible to blind and visually-impaired users. Such relief is necessary to guarantee equal participation in the digital and physical marketplace and to prevent Defendant from continuing to exclude individuals with disabilities from their online retail services. For Plaintiff, access to an automobile is not optional but essential—particularly when visiting family in Fort Lauderdale, Florida, where limited public transportation and extreme weather conditions make

independent mobility without a car unsafe and impractical.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et seq.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts substantial and continuous business within this District through its Website, **www.autonation.com**. A significant portion of the conduct giving rise to this action occurred within the Southern District of New York ("SDNY"), as Plaintiff attempted to access the subject Website from his residence in New York County—within the jurisdiction of this Court—on multiple occasions. Plaintiff's attempts were thwarted by accessibility barriers that prevented him from discovering the availability, pricing, and financing options for his desired Audi vehicle.

13. Jurisdiction and venue are further proper in this District because AutoNation's Website serves as a digital gateway to its national dealership network and financing operations. The Website invites users—including those residing in New York—to browse vehicles, schedule test drives, arrange financing, and purchase protection plans. Plaintiff, a legally blind New York

resident, attempted to access the Website to research and purchase a newer Audi model but was denied equal access due to systemic accessibility barriers. Although Plaintiff resides in New York, most of his immediate family live in Fort Lauderdale, Florida, where Defendant is headquartered, and Plaintiff travels there two to three times per year with his aide. The Website's inaccessibility has imposed additional burdens on Plaintiff by preventing him from arranging a local automobile purchase in Florida, thereby forcing him to incur unnecessary shipping expenses. Courts have consistently held that website accessibility barriers encountered by in-district users support personal jurisdiction over out-of-state operators. [1]

## THE PARTIES

14. Plaintiff **Edwin Williams** ("Plaintiff" or "Mr. Williams") is a resident of the Bronx, New York. Mr. Williams has been clinically diagnosed with **Best Disease (Vitelliform Macular Dystrophy)**, a progressive retinal condition that severely impairs central vision. As of his most recent examination, his best-corrected visual acuity is 20/200 in the right eye and 20/160 in the left eye, with a functional visual field radius of approximately 20–25 degrees. His condition meets the criteria for legal blindness under both federal and New York State definitions. (Ex. A – Edwin Williams, Medical Documentation of Legal Blindness, dated March 4, 2025).

15. Mr. Williams relies on screen-reading software, magnification tools, and keyboard-based navigation to access digital content. He is assisted by a primary care aide who

[1] See, e.g., *Chloe NA v. Queen Bee of Beverly Hills, LLC.*, 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); see also *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products).

possesses a valid driver's license and frequently ferries him to appointments in New York, including The Lighthouse, Visions, medical visits, shopping trips, and non-essential outings to maintain independence and quality of life. Despite these supports, Mr. Williams remains unable to independently access Defendant's Website due to pervasive accessibility barriers.

16. Although Mr. Williams resides in New York, most of his immediate family live in **Fort Lauderdale, Florida**, where Defendant is headquartered. Mr. Williams and his aide travel to Florida two to three times per year. During these trips, it would have been convenient for him to purchase or arrange for a local automobile in Florida through Defendant's Website, rather than incurring the unnecessary expense of purchasing elsewhere and arranging shipment. Defendant's inaccessible Website denied him this opportunity.

17. Mr. Williams was particularly interested in researching and purchasing a newer **Audi** vehicle through AutoNation.com. . However, the Website's accessibility barriers—including missing alternative text, broken ARIA references, empty buttons, and unlabeled form controls—prevented him from discovering the availability, pricing, and financing options for his desired car. Mr. Williams remains highly interested in purchasing an Audi through AutoNation's platform and intends to revisit the Website upon its remediation so that he may independently access the information and complete a transaction on equal terms with sighted consumers.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered

multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19. Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA and the NYCHRL. At all relevant times, Defendant **AutoNation, Inc.** has maintained control over the design, coding, and digital infrastructure of the Website and is responsible for ensuring its compliance with applicable accessibility standards, including the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Although the Website includes nominal references to accessibility, it lacks meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features. These deficiencies render the Website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

20. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike. Without accessible digital access, blind consumers are unable to locate, evaluate, or independently shop at Defendant's physical dealerships.

21. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software,

blind and visually impaired users are unable to fully access the information, products, and services offered online.

22. Plaintiff **Edwin Williams** is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. He relies on screen-reading software such as NVDA to access digital content and has completed formal training through Lighthouse Guild programs to maintain independence through assistive technology.

23. Plaintiff attempted to access Defendant's website on multiple occasions from his residence in Bronx County including on November 12, 2025, and November 20, 2025. During these visits, Plaintiff attempted to use Defendant's Website from his residence in Bronx County to research and purchase a newer Audi vehicle.

24. However, he encountered persistent access barriers—including unlabeled buttons, inaccessible form fields, broken keyboard navigation, missing alt. text, and inaccessible pop-ups—that prevented him from completing any transaction without sighted assistance.

25. These barriers are documented in independent accessibility audits conducted by an independent auditor: a SortSite validation report identifying WCAG 2.1 Level A and AA violations across hundreds of pages; a broken link report confirming inaccessible navigation paths and failed HTTP targets; and a WAVE evaluation showing 182 errors on the Women's New Arrivals section alone, including missing alternative text, contrast errors, and redundant links. These reports place Defendant on constructive notice of noncompliance and confirm that the Website remains inaccessible to blind users.

26. Plaintiff was specifically interested in purchasing a newer Audi vehicle through

AutoNation.com, taking advantage of Defendant's advertised "1Price" and "AutoNation Express" platforms. Due to the Website's failure to provide accessible product descriptions, navigable purchase flows, and properly labeled interactive elements, Plaintiff was unable to independently evaluate or purchase any vehicle.

27. Plaintiff selected AutoNation, Inc. over other automobile retailers because of its reputation for nationwide inventory, affordability, and unique bundled protection plans. He remains interested in purchasing an Audi and intends to return to the Website once it is remediated. Defendant's ongoing failure to provide equal access constitutes a denial of goods and services and causes ongoing deterrence.

28. Plaintiff has suffered concrete harm, including exclusion, frustration, and loss of autonomy. These injuries are directly traceable to Defendant's conduct and are redressable through injunctive relief. Plaintiff's encounters with Defendant's inaccessible Website demonstrate standing under Title III of the ADA: he attempted to access the Website on multiple occasions, was deterred by systemic barriers, remains eager to return once it is accessible.

## CLASS ACTION ALLEGATIONS

29. Plaintiff **Edwin Williams** brings this action on behalf of himself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.autonation.com or were denied equal access to its vehicle inventory, financing services, and protection plans due to persistent accessibility barriers during the relevant statutory period.

30. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a)

and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.autonation.com and were similarly denied equal access due to the same systemic barriers.

31. Common questions of law and fact exist among the Class, including:

Whether www.autonation.com qualifies as a "public accommodation" under Title III of the ADA;

Whether Defendant's Website and dealership operations constitute "places or providers of public accommodation" under the NYCHRL

Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's vehicle inventory, financing services, and protection plans;

Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in both the digital and physical marketplace.

32. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms and requires accessible digital interfaces to locate and shop at physical dealerships. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, unreadable vehicle specifications, and inaccessible financing application features—that affect all Class members.

33. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

34. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate

the Website's accessibility barriers and ensure equal access to its dealership services.

35. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

36. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.autonation.com or shop at Defendant's dealerships and faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

37. Plaintiff, EDWIN WILLIAMS, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

38. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

39. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

40. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

41. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

42. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

43. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
## (Violations of the New York City Human Rights Law)
## ("NYCHRL")

44. Plaintiff, EDWIN WILLIAMS, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

45. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

46. Defendant is subject to NYCHRL because it owns and operates the Website www.autonation.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

47. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website www.autonation.com and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

48. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-

107(15)(a).

49. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

50. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

51. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

52. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

53. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

54. Plaintiff is also entitled to reasonable attorneys' fees and costs.

55. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

56. Plaintiff, EDWIN WILLIAMS, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

58. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

59. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website and retail establishments, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

60. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

61. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

62. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

63. Defendant’s actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

64. The Defendant’s discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services

because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

65. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

66. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

67. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

68. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

69. Plaintiff, EDWIN WILLIAMS, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

71. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

72. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

73. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

74. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against

disabled individuals who are sight impaired.

75. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

76. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

77. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

78. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

79. Plaintiff, EDWIN WILLIAMS, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws

including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

81. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
December 16, 2025

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com